IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHOPPING DELITE, INC**<br><br>    **Plaintiff,**<br><br>v.<br><br>**CITY OF BELLEVILLE, and**<br>**SHARI BLAKESLEE,**<br><br>    **Defendants.** | **Case No. 22-cv-1065-SPM** |

**MEMORANDUM AND ORDER**

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants City of Belleville and Shari Blakeslee. (Doc. 57). For the reason's set forth below, the Court **GRANTS** the Motion.

This action arose from the denial of a commercial occupancy permit by the City of Belleville, Illinois to Shopping Delite. In the operative complaint, Shopping Delite raised two claims: first, that the Belleville Adult Oriented Businesses Statute, *i.e.*, Ordinance 8183-2018, was unconstitutionally vague as applied; and second, that said statute was unconstitutional under the First and Fourteenth Amendments to the extent it regulated expressive conduct. (Doc. 21).

**PROCEDURAL HISTORY**

On May 19, 2022, Shopping Delite filed its complaint against defendants herein. (Doc. 1). On July 7, 2022, defendants filed a motion to dismiss. (Doc. 19). On July 8, 2022, this Court entered an Order advising plaintiff that it could either file a response

to the motion to dismiss OR an amended complaint on or before August 8, 2022. (Doc. 20).

On July 27, 2022, plaintiff filed the first amended complaint ("FAC"). (Doc. 21). On August 18, 2022, defendants filed a second motion to dismiss. (Doc. 23). On August 19, 2022, plaintiffs were advised that a response was due to the pending motion to dismiss on or before September 19, 2023. (Doc. 24). Plaintiff did not file a timely response; therefore, on September 23, 2022, the undersigned issued an Order to Show Cause pursuant to Local Rule 7.1(c) and inquired why the Court should not deem the failure to respond as "an admission of the merits of the motion." (Doc. 25). The Order to Show Cause also advised plaintiff that this action could be dismissed for lack of prosecution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (*Id.*).

On October 6, 2022, plaintiff filed its response to the motion to dismiss FAC in compliance to the Order to show cause. (Doc. 26). Ultimately, on November 30, 2022, the aforementioned motion to dismiss was denied after this Court found that Shopping Delite had pled enough to plausibly allege that it was entitled to relief. (Doc. 28).

On January 6, 2023, this case was assigned CJRA Track C with a final pretrial conference setting on May 6, 2024 and a presumptive jury month of May 2024. (Doc. 31). On January 30, 2023, a scheduling order was entered with a discovery deadline of December 12, 2023 and a dispositive motion deadline of January 22, 2024. (Doc. 34).

On April 26, 2023, defendants filed a motion to compel contending that plaintiff did not respond to the discovery that had been propounded on March 1, 2023. (Doc. 38). On May 1, 2023, defendants filed a motion to amend the scheduling order to compensate for plaintiff's discovery delays. (Doc. 40). On May 9, 2023, a hearing was conducted at

which time the undersigned addressed counsel and the two pending motions. (d/e 46). The Court granted the motion to amend, but declined to rule on the motion to compel because plaintiff advised the Court that the written discovery was being provided. (*Id.*). Instead, the undersigned granted defendants fourteen days, or up to May 23, 2023, to advise whether they intended to proceed on the motion to compel. (*Id.*). On May 24, 2023, the motion to compel was terminated as moot because no objection had been received; however, defendants were advised they could reinstate this issue. (Doc. 47).

On December 20, 2023, defendants filed a second motion to compel claiming they had not yet received plaintiff's discovery responsive to the prior motion to compel. (Doc. 48). On that same date, defendants also filed a second motion to amend/correct the scheduling Order due to plaintiff's discovery delays. (Doc. 49).

At a January 24, 2024 hearing, plaintiff provided the discovery responses to defense counsel, claiming they were inadvertently not sent. (d/e 52). The next day, January 25, 2024, both motions were granted with the discovery deadline being extended to May 24, 2024 and the dispositive motion deadline being extended to June 23, 2024.[1] (d/e 58).

On June 7, 2024, defendants filed a motion to deem facts admitted. (Doc. 54). The motion referenced Requests for Admission that were propounded on May 3, 2024 and was filed pursuant to Rule 36 of the Federal Rules of Civil Procedure, which states in pertinent part,

> "**(3) *Time to Respond; Effect of Not Responding.*** A matter is admitted unless, within 30 days after being served, the party to whom

---

[1] Pursuant to Rule 6 (a)(3)(A) of the Federal Rules of Civil Procedure, the deadline for filing a dispositive motion was automatically extended to June 24, 2024 because June 23, 2024 fell on a Sunday when the Clerk's office was closed and inaccessible.

> the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 36 (a)(3).

On June 21, 2024, the undersigned granted the motion to deem facts admitted[2]. (d/e 56). The Order referenced local rules and noted that fourteen days had elapsed without any response, and that "failure to file a timely response to a non-dispositive motion may be deemed consent to the relief requested." (SDIL-LR 7.1 (b)(1)(A)).

On June 24, 2024, defendants filed their motion for summary judgment and memorandum in support thereof. (Doc. 57). On that same date, the Court advised plaintiff that the responsive pleading "shall be filed on or before July 24, 2024." (d/e 58).

Within the motion, defendants argued that summary judgment was appropriate as to Count I because plaintiff could not establish that defendants violated the Fourteenth Amendment. (Doc. 57, p. 7). Specifically, defendants contended that the City's Adult Oriented Business ordinance was neither constitutionally vague nor that it violated the due process clause. (*Id.*). Defendants further claimed that summary judgment was proper as to Count II because plaintiff could not establish that said ordinance was an unconstitutional regulation of expressive conduct. (*Id.*). Finally, defendants asserted that Blakeslee was entitled to summary judgment on the basis of qualified immunity because she was a government office performing a discretionary function. (*Id.*).

---

[2] Although not required to do so, the undersigned did not grant the motion until fourteen (14) days had passed since the filing, giving plaintiff the time necessitated in the local rules to file a response in opposition. See SDIL-LR 7.1(b)(2)(A).

On August 27, 2024, plaintiff filed a motion for an extension of time to file a response, apologizing for the delay and claiming it was "caused by the unexpected press of other business, including multiple appeal briefs in multiple cases." (Doc. 59). The undersigned notes that plaintiff did not seek an extension until more than 30 days *after* the deadline expired and more than 60 days after the filing of the motion. As such, said motion is DENIED as untimely. Indeed, it was too little, too late.

## MATERIAL FACTS

One section of defendants' motion was devoted to "Undisputed Facts", which was then broken down into several subsections. (Doc. 57). As set forth *infra,* plaintiff did not timely respond to the motion for summary judgment nor did plaintiff contest any of the purported material facts. A failure to properly contest the statement of material facts set out in the movant's statement constitutes a binding admission of those facts. *See Brasec v. Heinemann's Inc.,* 121 F.3d 281 (7th Cir. 1997).

Moreover, on June 21, 2024, this Court granted defendants' motion to deem certain facts admitted. "[A]dmissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment." *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir. 1987) (citing *Dukes v. South Carolina Ins. Co.,* 770 F.2d 545 (5th Cir.1985); *see also McCann v. Mangliardi,* 337 F.3d 782, 788 (7th Cir. 2003).

In light of the foregoing, the following is a recitation of the undisputed facts[3]:

### A. The City of Belleville's Adult Entertainment Businesses Ordinance

---

[3] Because Shopping Delite did not respond to the Motion for Summary Judgment, the undisputed facts alleged by defendants are adopted and admitted.

The City is a municipal corporation existing in St. Clair County, Illinois. On or about April 2, 2018, the City adopted Ordinance 8183-2018, which codified the City's Adult Entertainment Businesses Ordinance ("Ordinance"). (See generally Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*). The purpose of the Ordinance is clear – to protect, preserve, and promote the health, safety and welfare of the City's residents and patrons of sexually oriented businesses, as well as curb the negative secondary effects that historically and regularly accompany adult entertainment businesses. (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 1).

The Ordinance defines an Adult Oriented Store as "[a]ny establishment having: (1) [a] substantial or significant portion of its stock in trade in adult books, adult videos or adult novelties or any combination thereof; or (2) [a]ny portion of its stock in trade in adult books, adult videos or adult novelties and in conjunction therewith has rooms, designated areas or facilities for the presentation, observation or use by patrons of any item sold or rented in such establishment." (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 4). The Ordinance further defines Adult Novelties as "(1) [i]nstruments, devices, toys or paraphernalia that are designed for or marketed primarily for stimulating human genital organs, sexual arousal or sadomasochistic use; (2) [i]nstruments, devices, gag gifts, toys or paraphernalia that depict, display or are shaped in the form of specified anatomical areas; and (3) [o]ils, lotions, gels or creams that are designed for or marketed primarily for use upon specified anatomical areas and intended for stimulating human genital organs, sexual arousal or

as an aid to enhance or promote specified sexual activities." (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 3).

Per the Ordinance, the operation of sexually oriented businesses in the city requires special regulations and supervision. (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 1). These regulations include, but are not limited to, zoning and licensure requirements. Per the Ordinance, "the resources available for responding to problems associated with adult entertainment businesses are limited and are most efficiently and effectively utilized through appropriate zoning and a licensing and regulatory program." (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 1). The Ordinance provides that protection of the public is best served by limiting adult entertainment related uses to a permittable special use in Light Industry (D-1) and Heavy Industry (D-2) zoning districts in the City. (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, page 2). Further zoning requirements are provided in Section 122.09 of the Ordinance. (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, pages 9-10). Sections 122.04, 122.05 and 122.08 of the Ordinance provide the licensing procedure for obtaining licensure for an adult oriented business and the appeal process in the event of a denial or revocation, respectively. (See Exhibit A, *City of Belleville Adult Entertainment Businesses Ordinance*, pages 9-10).

### B. Plaintiff's Business Operations

Shopping Delite is owned and operated by John K. Coil. Mr. Coil has been described by the U.S. Department of Justice as "a long-time pornography merchant."

(See https://www.justice.gov/archive/tax/usaopress/2004/txdv04coik_final_final.pdf)[4]. Mr. Coil owns and operates more than 70 businesses in at least 13 states around the country. (See Exhibit B, *Plaintiff's Answers and Objections to Defendants' Interrogatories Directed to Plaintiff*). Mr. Coil's businesses generally provide the same merchandise at all of their stores. (See Exhibit C, *Deposition Transcript of John Coil*, pg. 10). The only real difference amongst Mr. Coil's businesses is the name, which he changes based on geographical factors to cater to locals. (See Exhibit C, *Deposition Transcript of John Coil*, pg. 10).

Shopping Delite sells almost exclusively adult novelties. [See Doc. 53, Exhibit A, *Photographs of Shopping Delite Merchandise*]. Included in, but not limited to, this merchandise are sex toys, vibrators, massage oils, massage candles, sex games, risqué costumes, and lingerie. [See Doc. 53, Exhibit A, *Photographs of Shopping Delite Merchandise*]. Brands included in, but not limited to, this merchandise include Coochy, Exposed, Forplay, Bewicked, Sheer Fantasy, and Fetish, amongst others. [See Doc. 53, Exhibit A, *Photographs of Shopping Delite Merchandise*].

Per Mr. Coil, Shopping Delite has a policy by which adult oriented items make up 25% or less of their total stock-in-trade. (See Exhibit B, *Plaintiff's Answers and Objections to Defendants' Interrogatories Directed to Plaintiff*; Exhibit C, *Deposition Transcript of John Coil*, pg. 4). Mr. Coil considers adult magazines, adult DVDs, and penis shaped health aids as adult oriented material, and nothing more. (See Exhibit B,

---

[4] *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites.")

*Plaintiff's Answers and Objections to Defendants' Interrogatories Directed to Plaintiff*; Exhibit C, *Deposition Transcript of John Coil*, pg. 4-5).

### B. Shopping Delite's Application and Denial

On or about August 6, 2021, Mr. Coil applied for a Commercial Occupancy Permit for Shopping Delite at 4507 N. Belt West, Belleville, IL, 62226, and paid the required $100 application fee associated with Commercial Occupancy Permits. (See Exhibit D, *John Coil's Occupancy Permit Application*). On or about August 3, 2021, Building Commissioner Steve Thouvenot inspected the property and noted that while the property was still stocking shelves, there appeared to be approximately 10 boxes of edible underwear. (See Exhibit E, *City of Belleville E-Mails*). On or about August 26, Mr. Coil was informed by Emma Oldehoeft that the edible underwear he had on display at the Shopping Delite store at 4507 N. Belt West constitute adult novelties and would cause the store to be considered an adult entertainment business. (See Exhibit E, *City of Belleville E-Mails*). Mr. Coil responded to Ms. Oldehoeft's email by stating he would remove the edible underwear. (See Exhibit E, *City of Belleville E-Mails*).

On or about February 17, 2022, Mr. Coil inquired to Clifford Cross, Director of Economic Development, Planning & Zoning, regarding the status of the occupancy permit. (See Exhibit E, *City of Belleville E-Mails*). On or about February 18, 2022, Mr. Cross responded to Mr. Coil and informed him that the "retail business" Mr. Coil claimed he was operating was in fact an "adult oriented business" that was not permitted in the C-2 zoned district. (See Exhibit E, *City of Belleville E-Mails*). Mr. Coil was informed that he was afforded an opportunity to appeal the decision, but he elected not to. (See Exhibit C, *Deposition Transcript of John Coil*, pg. 9-10; Exhibit E, *City of*

*Belleville E-Mails*). On or about March 7, 2022, Defendant, Shari Blakeslee, mailed via certified mail a notice of zoning violation to Mr. Coil explaining that his operation of Shopping Delite at 4507 N. Belt West was in violation of the Zoning Ordinance and he would need to take corrective measures within 15 days of the notice. (See Exhibit E, *City of Belleville E-Mails*).

**LEGAL STANDARD**

**Summary Judgment – Rule 56 of the Federal Rules of Civil Procedure**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562,

573-74 (7th Cir. 2017).

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Even where a nonmovant fails to respond to a motion for summary judgment, the movant "still had to show that summary judgment was proper given the undisputed facts." *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011); *Robinson v. Waterman,* 1 F.4th 480, 483 (7th Cir. 2021). Indeed, a court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. *Doe v. Cunningham,* 30 F.3d 879, 883 (7th Cir. 1994). The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure he has discharged his initial burden. *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir.1991). The court must make a further finding that given the undisputed facts, summary judgment is proper as a matter of law. *Wienco v. Katahn Associates, Inc.,* 965 F.2d at 568, *supra.*

## ANALYSIS

Defendants contend that they are entitled to summary judgment on both counts of the FAC. (Doc. 57). Defendants further assert that Blakeslee is entitled to qualified immunity. (*Id.*). This Court will address the defendants' arguments as presented.

### I. Count I

First and foremost, defendants contend that summary judgment is proper because plaintiffs cannot establish that the "Adult Oriented Business Ordinance" was

unconstitutionally vague in violation of the First Amendment. (Doc. 57). The First Amendment to the Constitution states,

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. 1.

A statute may be vague for one of two reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or, (2) if it authorizes, or even encourages, arbitrary and discriminatory enforcement. See *Hill v. Colorado,* 530 U.S. 703, 732 (2000). The First Amendment challenge to the constitutionality of adult entertainment ordinance implicates two conflicting public interests – protecting First Amendment liberties and minimizing any harmful secondary effects of such businesses. *Joelner v. Village of Washington Park, Illinois,* 378 F.3d 613, 620 (7th Cir. 2004).

In this case, the ordinance at issue defines an 'Adult Oriented Store' as:

> "Any Establishment having:
>
> (1) A substantial or significant portion of its stock in trade in adult books, adult videos or adult novelties or any combination thereof; or
>
> (2) Any portion of its stock in trade in adult books, adult videos or adult novelties and in conjunction therewith has rooms, designated areas or facilities for the presentation, observation or use by patrons of any items sold or rented in such an establishment." (Ord. 8183-2018).

An ordinance is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104 (108-109 (1972). As such, focus of this analysis must be on whether "substantial and significant portion of its stock in trade" is sufficiently defined.

The Seventh Circuit has had occasion to interpret a similar ordinance and has upheld same. See *Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988 (7th Cir. 2002). In *Pleasureland,* a §1983 action was brought against Mishawaka, Indiana, after the city enacted an ordinance that defined the different types of sexually-oriented businesses, in pertinent part, as:

> "a commercial establishment which has as a *significant or substantial portion* of its stock-in-trade or derives a *significant or substantial portion* of its revenues or devotes a *significant or substantial portion*". Section 125.02(A)(2) (emphasis added).

Pleasureland contended the Mishawaka ordinance was unconstitutionally vague and overly broad because it vested complete discretion in the hands of the enforcement agency and failed to provide the minimal guidelines required for due process. See *Kolender v. Lawson,* 461 U.S. 352, 358 (1983). While the Court did not specifically rule on whether the statutory language was unconstitutionally vague, the Court summarily rejected the overbroad challenge and cited to *Young v. American Min Theatres, Inc., et al,* 427 U.S. 50 (1976).

There is no question that state and local governments may regulate adult businesses to curtail secondary effects, which in this case are identified in the ordinance as "detrimental to the health, safety, moral, economic vitality and growth of the city and its citizens[5]." *Renton v. Playtime Theatres, Inc.* 475 U.S. 41 (1986). In this case, defendants proffered rationale supports regulation.

Indeed, the Seventh Circuit has found that the qualitative word "substantial" does not automatically deem an ordinance unconstitutionally vague. *Illinois One News,*

---

[5] See §122.01(B)(1) Adult Entertainment Businesses, City of Belleville.

*Inc. v. City of Marshall, Illinois,* 477 F.3d 461 (7th Cir. 2007). In *Illinois One*, the Appellate Court upheld a ruling from this district which analyzed the definition of "adult bookstore" in an ordinance adopted by the City of Marshall, which used the phrase "substantial or significant." *Illinois One News, Inc. v. City of Marshall, Illinois,* 2006 WL 449018 (S.D. ll. 2006). Indeed, the Southern District stated as follows:

> "In this case, the Court finds that any vagueness in the Ordinance's definition of "adult bookstore" is not so real and substantial as to have a significant deterrent effect on others wanting to engage in the type of protected speech purveyed by adult bookstores. First, there is no real ambiguity in the phrase "substantial or significant" that cannot be readily cured by a narrowing construction provided by state courts. In fact, many federal statutes use terms like substantial or significant without terrible problems. *See 15192 Thirteen Mile Rd., Inc. v. Warren,* 626 F.Supp. 803, 820–21 (E.D.Mich.1985). Furthermore, the evidence established that Marshall was prepared to give further guidance to businesses seeking to determine how to construe the Ordinance. The same is true for other words and phrases in the "adult bookstore" definition that ION believes are vague. Second, the Supreme Court has recognized a less vital interest in sexually oriented speech than in speech conveying ideas of social and political significance. *Young,* 427 U.S. at 61 (plurality opinion). Third, the alleged vagueness in the Ordinance is not a qualitative restriction. It does not have the potential of misleading anyone about the speech that is allowed or not allowed. Instead, it addresses the *amount* of speech that will bring one under the Ordinance's restrictions. Such a definition is unlikely to totally suppress any specific type of communication, although it may have an impact on the quantity someone chooses to purvey. In combination, these factors convince the Court that the Ordinance's definition of "adult bookstore" does not threaten the free market in ideas and expression in such a way that justifies hearing a vagueness challenge on behalf of third parties.
>
> Even if the Court were to entertain such a challenge, it would find that the ordinance is not unconstitutionally vague. The Seventh Circuit Court of Appeals has decided that ordinances defining businesses by whether a "substantial portion of its stock and trade" is devoted to the certain activities are not unconstitutional. *See Pleasureland Museum, Inc. v. Beutter,* 288 F.3d 988, 997 n. 4 (7th Cir.2002) (citing *Young,* 427 U.S. at 53 n. 5); *see also 15192 Thirteen Mile Rd.,* 626 F.Supp. at 820–821."

That same rationale applies in this case. Shopping Delite, via its owner John Coil, applied for an occupancy permit and, upon refusal, was offered assistance in curing the rejection. The City was prepared to assist and provide its guidance.[6] Moreover, the statute did not regulate the speech itself, but rather the quantity of said speech. It is uncontroverted that no due process rights were violated as Shopping Delite was provided with instructions on appealing the denial and on being heard. As such, summary judgment is appropriate as to Count I.

---

[6] As set forth in the "Material Facts", Mr. Coil was advised that Shopping Delite was considered an adult oriented business, that said business was not permitted in the C-2 zoned district, and that he could appeal the decision.

## II. Count II

As set forth *infra*, there is no question that defendants have an undeniable interest in combating the adverse secondary effects of adult business. See *City of Erie v. Pap's A.M.,* 529 U.S. 277, 296 (2000). Defendants contend that summary judgment as to Count II is appropriate because plaintiff cannot establish that the "Adult Oriented Business Ordinance" was an unconstitutional regulation of expressive conduct in violation of the First and Fourteenth Amendments. (Doc. 57). This Court concurs.

In *City of Renton v. Playtime Theatres, Inc.,* the Court considered the validity of an adult entertainment zoning ordinance and set forth a three-step analysis for evaluating the constitutionality of the ordinance. 475 U.S. 41 (1986). First, the Court determined whether the ordinance banned the business altogether, or whether it merely required that they be distanced from certain sensitive locations. *Id*. Next, the Court considered whether the ordinance was content-neutral or content-based. If an ordinance is content-based, it is presumptively invalid and subject to strict scrutiny. *Id.* at 46–47. On the other hand, if an ordinance is aimed not at the content of the business, but rather at combating the secondary effects of such business on the surrounding community (e.g., increased crime rates, diminished property values), it will be treated as a content-neutral regulation. *Id*. In *Renton,* the Court held that the zoning ordinance was a "content neutral" regulation of speech because while "the ordinance treats [adult businesses] differently than other businesses .... [it] is aimed not at the *content* ... but rather at the *secondary effects* of such theaters on the surrounding community." 475 U.S. at 47.

Similar to *Renton*, the City of Belleville ordinance is content neutral. As such, the

ordinance is subject to intermediate scrutiny to determine whether there is a sufficient connection between the negative secondary effects and the regulated speech. *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 441 (2002). Under this test, the Court must ask two questions: (1) What is the proposition that a city needs to advance in order to sustain a secondary effects ordinance; and, (2) How much evidence is required to support the proposition. *Alameda Books,* 535 U.S. at 441.

With respect to the first question, the City Council contended that the ordinance was needed to "protect, preserve, and promote the health, safety, and welfare of the patrons of such businesses as well as the health, safety, and welfare of the city's residents". Other proffered reasons for the ordinance included "protecting order and morality, preventing the deterioration of the city's neighborhoods, promoting retail trade, maintaining property values, and ensuring sanitary and safe public places.[7]" Clearly, the City's rationale was premised on the theory that it may reduce the costs of secondary effects without substantially reducing speech. *Ben's Bar, Inc. v. Village of Somerset,* 316 F.3d 702, 721 (7th Cir. 2003).

With respect to the second question, a sufficient evidentiary connection is established if the city relies "on *any* evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest. *G.M. Enters. v. Town of St. Joseph,* 350 F.3d 631, 639 (7th Cir. 2003) *emphasis added* (quoting *Alameda Books, 535 U.S. at 438).* Scientific or empirical evidence is not required. *Id.* Moreover, a city may rely upon judicial opinions, studies, experience-based testimony, and crime reports to show secondary effects. *R.V.S., LLC.,*

---

[7] § 122.01 (A) Purpose and Findings of Adult Entertainment Businesses

361 F. 402, 7t Cir. 2004).  Defendant's Adult Entertainment Businesses Ordinance identifies that "[e]vidence from many different sources confirms that the operation of adult entertainment businesses has historically and regularly been accompanied by secondary effects that are detrimental to the health, safety, moral, economic vitality and growth of the city and its citizens. *See* § 122.01(B). Although the ordinance does not identify the sources, empirical data is not necessary. *G.M. Enters.,* 350 F.3d 631 at 639 (quoting *Alameda Books,* 535 U.S. at 438*).*  Indeed, the ordinance identifies numerous ways in which the adult entertainment businesses can affect the city's residents and visitors and also refers to "public studies, cases, and other cities and towns in the U.S."

Based upon the undisputed evidence, the City of Belleville's statute is not an unconstitutional regulation of expressive conduct. The ordinance serves a substantial government interest and does not unreasonably limit plaintiff's expressive speech. As such, defendants are entitled to summary judgment as to Count II.

### III.    Qualified Immunity

In their final argument, defendants asserted that summary judgment was proper as to Blakeslee because she was protected by the doctrine of qualified immunity. (Doc. 57). Qualified immunity is designed to shield government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Moreover, public officials performing discretionary functions are generally shielded from liability for civil damages. *Harlow,* 457 U.S. at 818.

To determine whether qualified immunity applies, the district court should look at

all of the undisputed evidence in the record. *Green v. Carlson,* 826 F.3d 647, 652 (7t Cir. 1987). If the undisputed facts show that defendant's conduct violated no clearly established legal norms, then summary judgment must be granted. *Id.*

In this case, the evidence is undisputed that Blakeslee mailed a certified notice of a zoning violation to Mr. Coil, the owner of Shopping Delite, advising him of the need to take corrective measures. Blakeslee did not inspect Shopping Delite nor did she make any determination that said business was "adult oriented". As such, she is entitled to qualified immunity and summary judgment is, therefore, appropriate.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants City of Belleville and Shari Blakeslee in its entirety. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly. As such, all pending court dates are cancelled and vacated.

**IT IS SO ORDERED.**

**DATED: <u>August 29, 2024</u>**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**